# UNITED STATES DISTRICT COURT
# DISTRICT OF CONNECTICUT

| | |
|---|---|
| SCOTT POWELL,<br>    Plaintiff,<br><br>v.<br><br>ANDREA ALEXANDER, et al.,<br>    Defendants. | No. 3:16-cv-01654 (SRU) |

## RULING ON MOTION FOR JUDGMENT ON THE PLEADINGS

In the present dispute, defendants Cynthia and Ricky Diehl ("the Diehls") move for judgment on the pleadings against the claims brought by plaintiff Scott Powell. Powell filed suit against New Canaan police officers Andrea Alexander, William Ferri, and Marc DeFelice ("the New Canaan Defendants"), and the Diehls alleging violations of 42 U.S.C. §§ 1983 & 1988. Powell claims that the Diehls kidnapped his daughters and temporarily obtained custody by manufacturing allegations of child abuse, as part of a conspiracy with the New Canaan Defendants. The Diehls' motion contends that (1) they were not state actors amenable to suit under section 1983; (2) that falsely reporting criminal conduct to government officials is insufficient to establish liability as a state actor under Section 1983; and (3) that I cannot exercise supplemental jurisdiction over the state law claims against them. Because Powell has plausibly alleged that the Diehls' conduct constituted the existence of joint action that warrants treating the Diehls as state actors, I **deny** the Diehls' motion for judgment on the pleadings.

I.  **Standard of Review**

A motion for judgment on the pleadings under Rule 12(c) is decided under the same standards as a Rule 12(b)(6) motion to dismiss for failure to state a claim upon which relief can be granted. *Burnette v. Carothers*, 192 F.3d 52, 56 (2d Cir. 1999).

A motion to dismiss for failure to state a claim is designed "merely to assess the legal feasibility of a complaint, not to assay the weight of evidence which might be offered in support thereof." *Ryder Energy Distribution Corp. v. Merrill Lynch Commodities*, 748 F.2d 774, 779 (2d Cir. 1984) (quoting *Geisler v. Petrocelli*, 616 F.2d 636, 639 (2d Cir. 1980)). When deciding a motion to dismiss pursuant to Rule 12(b)(6), the court must accept the material facts alleged in the complaint as true, draw all reasonable inferences in favor of the plaintiffs, and decide whether it is plausible that plaintiffs have a valid claim for relief. *Ashcroft v. Iqbal*, 556 U.S. 662, 678–79 (2009); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555–56 (2007); *Leeds v. Meltz*, 85 F.3d 51, 53 (2d Cir. 1996).

Under *Twombly*, "[f]actual allegations must be enough to raise a right to relief above the speculative level," and assert a cause of action with enough heft to show entitlement to relief and "enough facts to state a claim to relief that is plausible on its face." 550 U.S. at 555, 570; *see also Iqbal*, 556 U.S. at 679 ("While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations."). The plausibility standard set forth in *Twombly* and *Iqbal* obligates the plaintiff to "provide the grounds of his entitlement to relief" through more than "labels and conclusions, and a formulaic recitation of the elements of a cause of action." *Twombly*, 550 U.S. at 555 (quotation marks omitted). Plausibility at the pleading stage is nonetheless distinct from probability, and "a well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof of [the claims] is improbable, and . . . recovery is very remote and unlikely." *Id.* at 556 (quotation marks omitted).

A motion to dismiss for lack of subject matter jurisdiction must be granted when the district court lacks the statutory or constitutional power to adjudicate a claim. *See Morrison v. Nat'l Austl. Bank*, 547 F.3d 167, 170 (2d Cir. 2008). In assessing a motion to dismiss for lack of subject matter jurisdiction, "the court must take all facts alleged in the complaint as true and draw all reasonable inferences in favor of plaintiff." *NRDC v. Johnson*, 461 F.3d 164, 171 (2d Cir. 2006). The court, however, refrains from "drawing from the pleadings inferences favorable to the party asserting [jurisdiction]." *APWU v. Potter*, 343 F.3d 619, 623 (2d Cir. 2003).

To defeat a motion to dismiss pursuant to Rule 12(b)(1), the plaintiff must establish by a preponderance of the evidence that the court has subject matter jurisdiction over the complaint. *See Morrison*, 547 F.3d at 170; *see also Makarova v. United States*, 201 F.3d 110, 113 (2d Cir. 2000); *Malik v. Meissner*, 82 F.3d 560, 562 (2d Cir. 1996). A court evaluating a Rule 12(b)(1) motion "may resolve the disputed jurisdictional fact issues by reference to evidence outside the pleadings, such as affidavits." *Zappia Middle E. Constr. Co. v. Emirate of Abu Dhabi*, 215 F.3d 247, 253 (2d Cir. 2000).

## II. Background

Scott Powell and his former wife have two minor daughters. Compl., Doc. No. 1, at 3.[1] In 2011, Powell's daughters accused him of child abuse, allegedly as a result of malign influence by Powell's ex-wife and her parents, Cynthia and Ricky Diehl. *Id.* The New Canaan Police Department and the Connecticut Department of Children and Families ("DCF") conducted "an extensive investigation of the . . . accusations . . . and concluded that the allegations were

---

[1] The facts are drawn from Powell's complaint, and for the purpose of the present motion, I assume them to be true and draw all reasonable inferences in Powell's favor. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678–79 (2009).

3

fabricated and unfounded." *Id.* at 4. Their findings were "reduced to writing and . . . maintained in the files of the New Canaan Police Department." *Id.*

Around the same time, Powell obtained full custody of his daughters after "an extensive evidentiary hearing" in which the Connecticut Superior Court found that Powell's ex-wife and the Diehls were responsible for "severe neglect including factitious disorder not otherwise specified (Munchausen by Proxy), parental enmeshment, educational and emotional neglect, and parental alienation." *Id.* at 3. The court considered expert "evaluations and reports," and "relied upon" a recommendation by Eric Frazer, Psy.D., "that the children have no communication with or access to the . . . Diehl[s] under any circumstances." *Id.* at 3–4. The court thus "ordered that the . . . Diehl[s] were not to have any contact with" Powell's daughters. *Id.* at 3.

On the evening of March 19–20, 2016, while Powell's daughters attended a sleepover at a friend's house, the Diehls "took the two children into their custody and control." *Id.* at 4. The following day, the Diehls took Powell's daughters to the New Canaan Police Department and met with two New Canaan police officers, Andrea Alexander and William Ferri. Despite having access to the records of the previous investigation, Alexander and Ferri—"with the knowledge and approval of" another officer, Marc DeFelice—"turned custody of the children over to" the Diehls at the latter's "specific request." *Id.* at 4–5. When Powell "repeatedly telephoned the New Canaan Police Department to report [his daughters'] disappearance and seek assistance," Alexander and Ferri instructed their fellow officers to tell Powell "only that his children were 'in a safe place,'" without disclosing that they were in the Diehls' custody. *Id.* at 5. That same day, Powell contacted DCF "to report that his children were missing and that New Canaan police officers appeared to have some knowledge of their whereabouts which they were concealing from him." *Id.* Timothy Welsh, a DCF investigator, reached out to DeFelice, who "asked the

4

DCF 'to stall in getting back to [Powell] so [the Diehls] can file an ex parte motion in court.'" *Id.* According to Powell, Welsh "refused to participate in the conspiracy and informed the police that their actions were unethical, improper, and possibly criminal." *Id.* at 6.

The Diehls subsequently "took the children with them and went into hiding." *Id.* On March 21, 2016, "while continuing to illegally hold and conceal the children," the Diehls "prepared, signed, and swore to affidavits in which they . . . swore that the children had told New Canaan police officers in their presence that the plaintiff was subjecting them to physical, emotional[,] and sexual abuse." *Id.* The Diehls also claimed that Powell "was a danger to [his daughters'] lives." *Id.* The affidavits neglected to mention that the Connecticut Superior Court "had not only awarded sole custody of the children to [Powell] but [also] had ordered that the children not have contact with . . . [the] Diehl[s]," who "were themselves an immediate danger to the mental, emotional[,] and physical health and well[-]being of the children." *Id.*

On the basis of the affidavits, "the Connecticut Superior Court issued an ex parte order placing the children in the custody of the . . . Diehl[s] and restraining [Powell] from having contact with them." *Id.* at 6–7. Powell retained counsel to challenge the order, and after hearings the court "restored full custody of the children to [Powell] and revoked all of the ex parte orders." *Id.* at 7. Powell asserts that "[a]s a result of the . . . wrongful actions of the defendants, [he] was deprived of his children for a period of many weeks, was caused to suffer severe emotional distress and anguish, and was caused to incur substantial legal expenses." *Id.*

Powell filed suit against the New Canaan Defendants and the Diehls on October 3, 2016, alleging violations of 42 U.S.C. §§ 1983 & 1988. *Id.* Specifically, Powell claims that "the defendants intentionally and maliciously interfered with and deprived [Powell] of his right to family association with his children, a right to secured to [him] by the First, Fourth, Ninth[,] and

5

Fourteenth Amendments to the United States Constitution." *Id.* at 7–8. He also claims that the defendants intentionally inflicted emotional distress, and that the Diehls committed the tort of vexatious litigation, both in violation of Connecticut common law. *Id.* at 8. Powell seeks "compensatory damages, punitive damages, attorney fees[,] and costs." *Id.*

The New Canaan Defendants filed an answer on February 2, 2017, in which they denied Powell's claims and raised the affirmative defenses of qualified and discretionary function immunity. Answer, Doc. No. 18, at 4–5. The Diehls filed a motion to dismiss on February 1, 2017, Doc. No. 17, which Powell opposed on February 16, 2017. Doc. No. 21. In their motion the Diehls argued that (1) they were not state actors amenable to suit under section 1983; (2) the court exercise supplemental jurisdiction over the state claims against them; (3) the court should abstain from hearing Powell's claims under *Younger v. Harris*, 401 U.S. 37 (1971); and (4) Powell's suit is barred by the *Rooker-Feldman* doctrine. The motion to dismiss was denied at a hearing on March 28, 2017. The Diehls filed the motion for judgment on the pleadings on January 16, 2018, Doc. No. 58, which Powell opposed on February 6, 2018. Doc. No. 60.

**III. Discussion**

The Diehls renew their argument that they were not state actors, and again assert that if I determine that they are entitled to an entry of judgment on the pleadings with respect to Powell's section 1983 claim, I should decline to exercise jurisdiction over their pendant state claims. Because Powell sufficiently pleads that the Diehls could plausibly be considered state actors, I need not revisit their pendent jurisdiction argument.

The Diehls' argument that they were not state actors is nearly identical to their argument at the motion to dismiss stage. This time, however, they introduce two cases to support their contention that even if they had knowingly furnished false information to the government

6

officials involved, that would still not establish that they were state actors under section 1983. *See Gordon v. City of New York*, 2012 WL 1068023, *12 (E.D.N.Y. 2012) ("the mere fact that a private person falsely reported criminal conduct to government officials is insufficient to establish liability as a state actor under Section 1983.") *See also Vazquez v. Combs*, 2004 WL 2404224, *4 (S.D.N.Y. 2004) ("merely filing a complaint with the police, reporting a crime, requesting criminal investigation of a person, or seeking a restraining order, even if the complaint or report is deliberately false, does not give rise to a claim against the complainant for a civil rights violation.").

Nonetheless, Powell's allegations, accepted as true at this point, sufficiently plead the existence of joint action such that the Diehls could be considered state actors. Powell alleges that the Diehls met with Alexander and Ferri at the New Canaan Police Department headquarters "[a]t approximately 12:43 p.m. on March 20, 2016," and that the police officers subsequently gave the Diehls custody of the children "in conscious disregard of the law and even of the policies of their own department." Compl., Doc. No. 1, at 4–5. Powell also claims that Alexander and Ferri instructed their fellow officers not to disclose the location of the children, and that DeFelice asked DCF investigator Welsh to "stall in getting back to [Powell]" even as Welsh "informed the police that their actions were unethical, improper, and possibly criminal." *Id.* at 5–6. The officers' actions, Powell asserts, "were taken for the specific purpose of assisting the . . . Diehl[s] to obtain fraudulently the ex parte court order" transferring custody to the Diehls. *Id.* at 6–7. Despite the Diehls' protests that the complaint "fails to allege facts plausibly suggesting a meeting of the minds," *see* Mot. Dismiss, Doc. No. 17, at 13, Powell provides enough "details of time and place" and "facts demonstrating that the [Diehls] acted in concert

7

with the [police]" to survive a motion to dismiss. *See Ciambriello v. Cty. of Nassau*, 292 F.3d 307, 323 (2d Cir. 2002) (internal quotation marks omitted).

The present case is distinguishable from instances where a private party "merely elicit[ed] an exercise of state authority." *Harrison v. New York*, 95 F. Supp. 3d 293, 326 (E.D.N.Y. 2015). As the Second Circuit has held, "[a] private citizen who files a police report, true or false, is not acting under color of state law," and the "provision of background information to a police officer does not by itself make [a defendant] a joint participant in state action under [s]ection 1983." *Ginsberg v. Healey Car & Truck Leasing*, 189 F.3d 268, 272 (2d Cir. 1999); *Armatas v. Maroulleti*, 2010 WL 4340437, at *17 (E.D.N.Y. Oct. 19, 2010), *accepted*, 2010 WL 4340334 (E.D.N.Y. Oct. 22, 2010), *aff'd*, 484 F. App'x 576 (2012) (summary order); *accord Woods v. Valentino*, 511 F. Supp. 2d 1263, 1274 n.19 (M.D. Fla. 2007) ("Private entities do not transform themselves into state actors simply by calling the police . . . .").

In the present dispute, Powell claims much more than simply that the Diehls contacted the police or "st[ood] to benefit from an assertion of authority under color of law." *Cf. Ginsberg*, 189 F.3d at 273. He alleges facts plausibly indicating that the Diehls "exercised such extreme influence over the [state] defendants," Compl., Doc. No. 1, at 2, that the police officers ceased to "exercise[] independent judgment" and thereby made the Diehls jointly liable for their conduct. *See Ginsberg*, 189 F.3d at 273; *Rodriguez v. Winski*, 973 F. Supp. 2d 411, 423 (S.D.N.Y. 2013) ("[T]he substitution of private judgment for police judgment [is] necessary to constitute joint action."); *accord Mendocino Envtl. Ctr. v. Mendocino Cnty.*, 192 F.3d 1283, 1302 (9th Cir. 1999) ("[P]olice failure to exercise independent judgment may help demonstrate involvement in conspiracy[.]"). Such allegations that the officers "acted at the insistence and request of" a

private party, and "depict[ing] joint action" by the officers and the private party, are "sufficient. . . to withstand a motion to dismiss." *See Abbott v. Latshaw*, 164 F.3d 141, 147–48 (3d Cir. 1998); *see also Mendocino Envtl. Ctr.*, 192 F.3d at 1301 (The "agreement or meeting of the minds to violate constitutional rights . . . need not be overt, and may be inferred on the basis of circumstantial evidence such as the actions of the defendants.") (internal quotation marks omitted).

"Drawing every reasonable inference in favor of the plaintiff[]," Powell has, "at least for present purposes, sufficiently pled the existence of joint action that warrants treating [the Diehls] as state actors." *Coakley v. Jaffe*, 49 F. Supp. 2d 615, 624 (S.D.N.Y. 1999), *aff'd mem.* 234 F.3d 1261 (2000).

### IV. Conclusion

The Diehls' motion for judgment on the pleadings raises nearly identical arguments to their motion to dismiss, and their additional argument does not influence the state actor analysis with respect to Powell's well-pleaded allegations. Powell has plausibly alleged that the Diehls' conduct constituted action that warrants treating the Diehls as state actors. Therefore, the Diehls' motion for judgment on the pleadings (Doc. No. 58) is **denied**.

So ordered.

Dated at Bridgeport, Connecticut, this 17th day of September 2018.

/s/ STEFAN R. UNDERHILL
Stefan R. Underhill
United States District Judge